WILLIAM DUESMAN v. DAVID A. HALE.

FILED JUNE 23, 1898.   No. 10108.

**Trusts:** CONFLICTING INTERESTS OF PERSONS FOR WHOM TRUSTEE ACTS:
UNDISCLOSED INTEREST OF TRUSTEE: BURDEN OF PROOF. Where
a person acted in a fiduciary relation to two parties to a con-
tract having antagonistic interests to each other, and one of
these parties was unaware of such person's fiduciary relation to
the other, such person, when he seeks in an action at law to
assert an advantage to himself as against the party ignorant of
the dual capacity in which the claimant had acted, must show
that the advantage claimed was not inequitable to the party
against whom the claim is asserted.

ERROR from the district court of Platte county. Tried
below before WESTOVER, J. *Reversed.*

*James G. Reeder* and *A. M. Post*, for plaintiff in error.

*C. J. Garlow* and *Reed & Gross*, contra.

41

RYAN, C.

In this case there was a verdict for the plaintiff in accordance with a peremptory instruction, and this pro-ceeding in error is prosecuted for the reversal of the judgment thereon rendered by the district court of Platte county. Plaintiff in error was held liable as one of the subscribers of the contract set out in the opinion in *Hale v. Ripp*, 32 Neb. 259, and afterwards considered in *Ripp v. Hale*, 45 Neb. 567. In the case under review we need not discuss the defense considered in the two opinions just referred to. In the answer it was admitted that the defendant signed the contract sued upon. This contract was in this language:

"HUMPHREY, NEBRASKA, June 1, 1888.

"We, the undersigned, hereby agree to pay the several sums opposite our names as follows; to deposit in the bank said sums, and it is to be paid over at the completion of a depot on the F., E. & M. V. R. R. at Humphrey. The object is to pay for the east forty acres of land belonging to said Henry Gebecke and deeding the same to said R. R. Co.

| "JACOB RIPP. | $200. |
| "D. A. HALE. | $100. |
| "WILLIAM DUESMAN. | $50. |
| "F. M. COOKINGHAM. | $100." |

There were fourteen other subscribers whose names we omit.

It was alleged in the answer that about the date of said subscription plaintiff and others, to advance the interests of the village of Humphrey, acting in concert, set about devising ways and means to induce the Fremont, Elkhorn & Missouri Valley Railroad Company to erect and maintain a depot and station at or near said village; that before the signing of said paper plaintiff, designing and intending to defraud the other parties to said paper, falsely and fraudulently represented to them

that he had been informed by the company that if the parties would raise a fund for a certain described forty-acre tract and with said fund purchase said land and convey it to the company, it would erect and maintain a depot and station at said village, otherwise that it would not do so; that to accomplish his fraudulent purpose plaintiff caused said paper to be circulated and advised the defendant and other parties to sign said paper in amounts set opposite their names for the purpose of inducing said company to erect and maintain said station and depot at said village, and at the same time it was mutually agreed by and between plaintiff and the parties to said paper that the fund so subscribed should be collected and deposited in one of the banks of said village and should be used in purchasing the land described in said paper, and that upon the completion of a depot and station by the said company at said village the said land should be bought with the said fund and conveyed to the said company for station and depot purposes only, upon condition that the said company would forever hold the same for said purpose and no other; that by these inducements defendant was persuaded to aid and did subscribe the amount sued for; that afterward plaintiff, in pursuance of his said design, procured a conveyance of the land to himself, as agent of the company, and has since become the absolute owner thereof in fee simple; that immediately upon the procurement of the said conveyance of said land plaintiff entered upon, and ever since has been in possession of, the whole of it, except about five acres, and the defendant alleged that the conveyance to plaintiff as agent was colorable only and was further made to deceive the parties to said paper, for the whole of said land was paid for by plaintiff and was purchased by him in his own right and for his exclusive use and benefit; that immediately after the purchase of said land plaintiff conveyed about seven acres thereof to said railroad company for $1,000, but has always retained the balance thereof, and while pretending to act

in concert with and in behalf of the other subscribers to the agreement set out in the petition, in the promotion of the object therein mentioned, he was, without the knowledge of his fellow subscribers, acting as the agent of the Fremont, Elkhorn & Missouri Valley Railroad Company, both in the procuring of the subscription and in the location of said depot and station; that while pretending to act for and on behalf of such other subscribers, but in fraud of their rights, he purchased the forty-acre tract at a price largely in excess of its value or of the price for which it might have been purchased, and that while pretending to act for and in behalf of this defendant and such other subscribers he executed to, and received from, the railroad company the conveyance referred to of about thirty-two acres of the forty-acre tract. It was further alleged in the answer that each and all the representations of plaintiff made to induce the subscribers to sign said paper were false and untrue, as the plaintiff knew at the time of making them.

By his reply plaintiff admitted his ownership of the forty-acre tract, less about seven and one-half acres, and that he paid the purchase price for said tract and that it was conveyed to him as agent for the railroad company but he denied that this, or any other of his acts, was for the purpose of deceiving the subscribers to said paper, and alleged that his purchase was for the general good of the citizens and residents of Humphrey and to thereby induce the said railroad company to erect and maintain a depot and station, and that what he did was done for the benefit of the public generally and to hurry the matter of the erection of said depot station, and in reliance upon the faith and credit of the subscription paper and the assignment thereof and the belief that the same would be promptly paid, and because the owner of the land refused to convey until the whole amount of the purchase-money was paid to him.

From the evidence it is very clear that the arrangement whereby the railroad company was induced to build

and maintain a station and depot in consideration of the conveyance to it of only about seven and one-half acres of land, and by virtue of which plaintiff became the owner of the remainder of the forty-acre tract in his own right, was unknown to any of the co-subscribers of Hale. It was testified by Mr. Hale as follows: "Was present when subscription contract was prepared and stated that the railroad company demanded forty acres of land as a condition for the removal of its side track and stock yards from Brookfield to Humphrey." In explanation of this it is proper to say that earlier in giving his testimony Mr. Hale had described the necessity of a discontinuance of the station at Brookfield that one might be established at Humphrey. It is quite clear that when Mr. Hale represented to the signers that forty acres would be required to secure the location of a depot at Humphrey he thought it would be necessary so to do, but that, subsequently, the railroad company was satisfied to do as they were asked to do in consideration of the conveyance to it of but about seven and one-half acres. The result of this is that Mr. Hale has become the owner in fee simple of thirty-three of the forty acres and is now seeking to hold his co-subscribers to the full payment for the entire forty-acre tract. It is not disclosed by any of the evidence the capacity in which Mr. Hale was the agent of the railroad company, nor when that agency began or ended. It may be true, as claimed, that the railroad company was under obligations to Mr. Hale for services rendered in its behalf, but this it devolved on Mr. Hale to show. The condition of the issues in this case is not as it was in *Ripp v. Hale, supra,* wherein HARRISON, J., said that the land was conveyed to Hale, not for himself, but as agent for the company, and what the company did with the land could not, and did not, affect the liability of the defendant upon the subscription, nor tend in any manner nor to any extent to aid the jury in a determination of any of the issues submitted to them. It must be assumed that Mr. Hale, though an

agent of the railroad company, acted in good faith when he represented that what it was desired to accomplish could only be brought about by a conveyance to the railroad company of the entire forty-acre tract. This subscription was procured upon the faith superinduced by this representation that the location at Humphrey could only be effected by the donation of the entire tract. Mr. Hale was acting as agent for the donee, was, as he testified, seeking to accomplish a common purpose with his co-subscribers, and to them made the representation which influenced their subscriptions. The advance by him of the $2,000 with which to purchase the forty acres was neither at the instance nor upon the representation of any subscriber that such advance was necessary; indeed, he, as agent of the railroad company, could not in reason be assumed to act upon the representation of parties whom he knew not to have equal means of information with himself. It was his duty, if less than forty acres were acquired, to acquaint his co-signers with that fact, and he should not be permitted to profit at their expense by withholding information which should have been imparted to them. Under analogous conditions this principle was applied in *Jansen v. Williams*, 36 Neb. 869, and in *Campbell v. Baxter*, 41 Neb. 729. (See also *Fitzgerald v. Fitzgerald & Mallory Construction Co.*, 44 Neb. 463.) We do not assume that Mr. Hale was guilty of the corrupt misconduct imputed to him, but he was confessedly acting in a fiduciary capacity for two parties whose interests were antagonistic. In the transaction he seems to have gained an advantage personal to himself and, as one class of beneficiaries allege, at their expense. The relations sustained by him to both parties for whom he was acting devolved upon him the burden of showing that he derived no advantage to himself at the expense of the party whom he sued. Whether the proofs were sufficient to meet this requirement was a question of fact which should have been submitted to the jury. (*Hale v. Ripp, supra.*) For the reason that by a peremp-

tory instruction this question was withdrawn from the jury the judgment of the district court is reversed.

REVERSED AND REMANDED.

SULLIVAN, J., not sitting.

HARRISON, C. J.

I agree that the peremptory instruction was not proper and the judgment should be reversed.